and Judge Graham this morning. He's visiting with us from the Southern District of Ohio. And Judge Graham, we appreciate you coming all the way down from Columbus to help us decide these cases. It's a pleasure and an honor to be here. And we have three cases that are scheduled for oral argument this morning, and I see that counsel is ready for the first one. And Ms. Lennon is here for Mr. Williams, and Ms. Reynolds is here for Rickman, the warden. And Ms. Lennon, you may begin. May it please the Court. My name is Valerie Lennon, and I represent the appellant in this case, Quincy Williams. There are three issues before the Court today. First is competency, second is spoilation of evidence, and third is summary judgment. So turning to the first issue before the Court today, that is the issue of competency. Under Rule 17 of the Rules of Civil Procedure, the District Court plainly erred by failing to sua sponte inquire into Mr. Williams' competency after he alerted the Court on seven different occasions that he was being treated for mental illness. Specifically, he was being treated by Florida Department of Corrections in a mental illness treatment dorm. He, in five of those seven notices, he asked for the appointment of counsel. The District Court denied all five of those appointments of counsel. Now, under Rule 17c, it requires the District Court, says that the District Court must appoint a guardian ad litem or issue another appropriate order to protect a minor or incompetent person who is unrepresented in the action. Well, the problem here is that he never made a request for the Court to conduct a mental competency evaluation. And so why doesn't that resolve this issue? Your Honor, that would require a mentally incompetent person to recognize the limits and extent of his own incompetency. Incompetent, the dictionary defines it as a mentally deficient person lacking in ability. So the very definition of incompetence means that Mr. Williams may not recognize the extent, but there's also an independent obligation on the District Court where there is some sort of allegation or verifiable evidence to sua sponte make that determination. Well, he's been involved in quite a few proceedings before and he's done pretty good job of representing himself before. If we review this issue under an abusive discretion standard of review, why shouldn't we affirm the District Court if it's clear from the record that he's done a pretty good job before? Your Honor, we only see what's before the District Court. We don't know what's going on behind the scenes with Mr. Williams. We don't know if there's other evidence that could have come forward, but he wasn't mentally competent enough to bring that evidence or that allegation forward. So it's not really clear, it's not really a complete record to base that determination on. I approach it sort of in the same way as Judge Wilson, maybe from a different angle. A lot of times, not all the time, but a lot of times individuals who are in custody and being treated are receiving certain types of medication to try to help them with their illness or with their problem. And we don't know from the record whether or not that was a situation with him or not. You can have a person who has mental issues of one kind or another be dealing basically okay with day-to-day things, even litigation, if he or she is receiving the appropriate medications. But here, the record seems to be pretty silent on that issue. Correct, Your Honor. And this Court's seen enough competency cases to understand that treatment for mental illness can be a hit and miss in order to get those medications correct. And I would draw the Court's attention to the case of Powell v. Simmons from the Third Circuit, where he, it was also a Section 1983 inmate abuse case. The inmate had been declared incompetent in a criminal proceeding. And the Third Circuit held that the District Court erred in the civil case by not conducting some sort of competency proceeding to verify whether the extent of his mental illness, whether he was receiving appropriate treatment, whether the treatment was working. Isn't that the difference between this case and Powell? The defendant in Powell had been adjudicated incompetent in a separate criminal proceeding, but that's not the case here. That's not the case here. How about the second issue? The second would be spoilation of evidence. What the District Court, so the evidence that went missing in this case were two videos of the entire incident, of the pepper spraying and whether he was returned to a decontaminated. So to get straight to the heart of the matter on this issue, there's no evidence of bad faith on the part of the appellee here, right? That's correct, Your Honor. But this Court did hold in another case, which was an unpublished case, the Graff case, that the aggrieved party doesn't necessarily need to show bad faith if the prejudice suffered is so significant that this was the critical piece of evidence. And in this case, this was the critical, the crucial piece of evidence. Two pieces show definitively whether he was causing a disturbance that warranted being pepper sprayed, number one, and number two, whether he was returned to the same cell or to another cell. Those are the dispositive issues here in the case, the material issues of fact, and that's what those videos showed. So I would ask the Court to find on that issue that the District Court erred by entering summary judgment when that was outstanding. Mr. Williams, it does appear, was entitled to the spoilation of evidence instruction on that. I also do want to point out to the Court, I asked the Court to take judicial notice of the fifth factor in the flurry factors, which is the potential for abuse. Just in the reported cases in the past four years, there's three other cases where the Florida Department of Corrections have lost similar videos. So I ask the Court to take judicial notice of that and give it special consideration. Well, was there any indication of what the formal retention policy of the DOC was with regard to such videos or tapes? I'm not clear. The formal policy was to transmit the videos to the Florida Inspector General, I believe, and then it was lost somewhere in that process, and I believe that's how it was. Actually, the Inspector General received them, did he not? And it was someone in the Inspector General's office who lost them, wasn't it? Correct, Your Honor. Counsel, did these tapes include audio recordings? I see nothing in the record that tells us that. If they didn't, then they wouldn't shed any light on whether he was raising a ruckus, wouldn't they? Well, it might. So let's assume that it doesn't have audio. It would still show if he was, the guards claimed he was kicking the door, so it would still show that. It would show the actual pepper spray incident, and it would show his removal from one cell and what cell he was returned to, presumably. Now, the incident report doesn't say actually what the video showed. The incident report simply says that it doesn't support Mr. Williams' allegations. So again, without that, without those two videos, it's virtually impossible for Mr. Williams to prove his case. The district court relied on that Mr. Williams could get affidavits from inmates at other facilities to ... Well, you don't want to say that, do you? That without the video, he can't prevail. He can prevail without the video. Well, if he got the instruction about spoilation, he could certainly try to get those inmates to come forward, but it's much easier with those videos. The district court relied on that he could contact those inmates, which are now at other facilities, to get affidavits, but that really ignores the reality of the situation. They're inmates. He's a pro se inmate, struggling with mental health illness issues, trying to contact who very well may be reluctant to execute an affidavit against a guard who has authority over them. And certainly out of fear of retaliation, the Section 1983 case law is replete with retaliation claims in response for another 1983 claim. The final issue before the court is the general summary judgment issue. What the district court did without those videos, it was Mr. Williams' word against the word of Appalese Rickman and Harrell. None of the affidavits submitted in the case averred that Mr. Williams was returned to a decontaminated cell. There was an incident report that said he was returned to another cell, but that was not a sworn affidavit. So what the district court... Counsel, is there any evidence in the record about what effect being returned to the cell that was only partially decontaminated had on him? Mr. Williams claimed that he had... There has to be some significant injury, doesn't there, Turner? He claimed that he had difficulty breathing and high blood pressure. He also claimed paranoia. How do we know that was from the partial decontamination, or whether it was caused by the original macing? That would be a genuine issue of material fact that should have been resolved through trial. Wasn't he being required to at least allege that in his complaint, that there was an additional injury? He didn't do that, did he? He did allege multiple injuries from it, and I don't remember what evidence he submitted to support it, but that's certainly a genuine issue of material fact that was not appropriate for the summary judgment stage. And again, one of those is paranoia that he suffered from the incident of being in that decontaminated cell. The record certainly does support that he's had some mental illness problems subsequent to this incident. So, if there are no further questions from the court... I see you've reserved some time. May I reserve the rest of my time for rebuttal, Your Honor? You may. Thank you. Thank you. And Ms. Reynolds. May it please the court. My name is Damaris Reynolds, and I represent the appellees Nicholas Rickman, Chad Harrell, and John Barfield. I'd like to address the two issues of the summary judgment and disqualification initially. Those issues are really intertwined. Mr. Williams alleges that the lower court erred by granting summary judgment in favor of the appellees despite the loss of the video, the two videos, the fixed-wing video and the handheld video. Which Samuel Culpepper, Warden Samuel Culpepper, sent off to the Inspector General, as required by the procedure of the Florida Department of Corrections, and then the Inspector General's office, lost the video. Rule 37E of the Federal Rules of Civil Procedure deals with the failure to preserve electronically stored information. But the rule only applies if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it. So that's not the case here. We don't have a party failing to preserve the evidence. The loss of the evidence was due to actions taken by Warden Samuel Culpepper, mailing it to the Inspector General, and the Inspector General losing it. The Inspector General of the Florida Department of Corrections is not a party here. The parties never had the video in their possession. They never had any access to it. They certainly can't be held accountable for its loss. In fact, it would have helped the parties to have it. So there was certainly no intent on their part to deprive the plaintiff. So the video was sent where? To the Inspector General's office. It was sent from the institution to the Inspector General's for them to keep with their file. Okay. And the Inspector General's office is located where? In Tallahassee. Okay. In Tallahassee. Yes, sir. At the central office. But apparently they somehow misplaced it. How do we disincentivize prison wardens from getting rid of inculpatory evidence if we say that as long as they send it to the Inspector General's office, if it's lost there, it's not our problem. There's no bad faith on our part. Well, Your Honor, that would be a true statement. The warden here did send it to the Inspector General and the Inspector General lost it. So the warden didn't do anything wrong. It was the Inspector General's office that somehow misplaced it. But in any case, we do have some indication of what the videos would show. First of all, the fixed-wing video. The record reflects in document 97-3 on page 7 that the fixed-wing video did not contain any relevant information because the alleged activities occurred outside of the camera range. So the fixed-wing video did not capture any of the activities in question. And the fixed-wing video contained no audio. That's specifically stated in the record. Well, what we have here, let me ask you questions about summary judgment and whether there's a genuine issue of material fact as to whether or not there was a penological reason for the chemical spray. We've got a case out of the 11th Circuit that was decided in the year 2010, Thomas v. Bryant. And that case is virtually identical to this case, unless you can distinguish it for us this morning. It was officers used chemical spray on an inmate suffering from mental illness. And he had a documented history of mental illness. And they sprayed him inside his cell for Mr. Williams was sprayed for causing a disturbance. And there was no dispute that he was secured in a steel cell when he was sprayed, nor that he posed a threat to anyone at the time he was sprayed. We said the only remaining, the only difference is whether his behavior at the time of the incident of such behavior even occurred. And we found that there was a genuine issue of material fact for the jury to decide. I don't see any difference between this case and Thomas v. Bryant. Yes, sir. In this particular case, the mental illness, the only evidence of mental illness relates to self-injurious behavior. So that's what he was treating for. There's no evidence they were both sprayed for causing a disturbance in their cell. And they were both sprayed while they were in their cell. And they both, both appellants in these cases claim that they were not causing a disturbance. And in Thomas v. Bryant, we said there was an issue of material fact that was the word of the inmate against the word of the jailers. So I don't see a difference between this case and Thomas v. Bryant. Well, as the Court is well aware, the spraying of inmates for causing a disturbance is not, does not constitute a constitutional violation. Now, what's at issue is whether he was causing the disturbance or not causing the disturbance. And he has not presented any evidence other than his own unsupported allegations that he was not causing a disturbance. Well, let's stop there. That's enough to preclude summary judgment in most cases, right? You've got to view the evidence in the light most favorable to the non-moving party. Your clients asserted that he was causing three or two or three types of disturbances. He submits a declaration under penalty of perjury, which says that everything in his complaint is true. And the complaint says he wasn't causing any disturbance. Why doesn't that create an issue of fact? The allegations were that he was yelling and that he was kicking his cell door. He was yelling profanity and kicking his cell door. He denied causing a disturbance. He never specifically denied yelling profanity and kicking the cell door. Those are disturbances, are they not? I think that's subjective. It could be that he thought that wasn't causing a disturbance, but the officers believed he was causing a disturbance. I know, but that's not the standard on summary judgment. You've got to look and see whether or not the evidence in the light most favorable to the plaintiff here creates an issue of fact. And if he denies causing, if he had said I didn't cause any disturbance whatsoever, would that create an issue of fact for the jury? It might, but the allegations were kicking the door and if he responds at summary judgment with an affidavit or a declaration under penalty of perjury that says I deny causing any disturbance whatsoever, is there an issue of fact for the jury? He needs to deny that the allegations made against him were true. He needs to deny that he was doing the things they alleged he was doing. But if he says no disturbance whatsoever, why isn't that a matter for the jury? You mean he has to go down and say I did not do X, I did not do Y, I did not do Z, and I didn't do them in the way that I'm alleged to have done them. He has to do that specifically? I believe that was the reasoning of the court, Your Honor. I know it was. I'm wondering whether that reasoning was correct or not. Do you think it was correct? I think it's a gray issue. With regards to the handheld video, that would not have helped Mr. Williams establish that he was not causing a disturbance because in document 193 on page 2 of Mr. Vickman's incident report, it tells us what was on the handheld video. And what it says is that he was causing a disturbance and then the cameraman came in for the warning that was given to him to stop causing the disturbance. There's no indication that he was causing a disturbance while the warning given to him was being filmed. So then they left. He was compliant and they left. Then he started causing a disturbance again. He was sprayed. And then the cameraman was called to come back and film the post-use-of-force procedure. So again, the time period in question would have been between the times that he was being videotaped. So the videotapes would not have helped him to establish that the behavior he was alleged of committing did not happen. As for the grant of summary judgment, going back to that point, Mr. Williams' claims, even if he was sprayed for no reason, even if he was returned to a decontaminated cell, his claims for compensatory and punitive damages could not survive summary judgment. And that's because what he claims he suffered was elevated blood pressure, headaches, difficulty breathing. He said he was gagging. He had a burning sensation after being sprayed. Those alleged injuries he suffered, even if we believe he was sprayed for no reason, and even if we believe he was left in a partially decontaminated cell, those alleged injuries are de minimis. Wait, wait, wait. Hold on. Elevated blood pressure in certain circumstances can prove deadly. You think that's de minimis? According to Dr. Albert Carl Meyer, who reviewed the medical records, what this appellant experienced was de minimis. That's document 132, exhibit J. It was his opinion, Dr. Albert Carl Meyer, and he's been practicing medicine for over 50 years, that the alleged injuries were de minimis and that he sought no further treatment. Mr. Williams sought no further treatment related to the use of chemical agents. Well, I'm going to go back to the Thomas case that I asked you about before, the case that's virtually identical to this one, Thomas versus Bryant. And we acknowledged in that case that an inmate who is chemically sprayed may suffer psychological injuries from exposure to chemical agents such as, quote, feelings of intense helplessness, fear of dying, attempts at suicide, and exacerbation of other symptoms of mental illness, close quote. And in his sworn declarations in this case, Mr. Williams has asserted that he's experienced those symptoms, including intense paranoia, insomnia, suicidal inclinations, and that he frequently hears voices. And you're going to tell me that those are de minimis injuries? Those are psychological injuries. What I was saying is that the physical injuries he sustained are de minimis. And so his claims for compensatory and punitive damages could not survive summary judgment as a result. His physical injuries were de minimis. And that's why his claims... I understand. But what we said in Thomas versus Bryant that you don't necessarily have to have a physical injury. You can have psychological injuries that are severe enough to constitute a compensable injury. Isn't that what we said in Thomas versus Bryant? Your Honor, it's my understanding under the PLRA that without a physical injury, there can be no recovery, no compensatory or punitive damages. He could very well have a case for nominal damages. But it's my understanding under the PLRA that without a physical injury that's more than de minimis, there can be no recovery of compensatory and punitive damages. What do you think de minimis means? A minimal injury, one that does not... Physical injury, one that does not require medical attention, one that could be taken care of at home by taking a shower, splashing water on your face, antibiotic ointment, Band-Aids. That sort of thing would be de minimis. Bruising, swelling, a burning sensation. The things that he has described are de minimis physical injuries. And again, that was the expert opinion of Dr. Carl Meyer. Now, the district court never relied on that reason, right? Because it found that there was no dispute of fact with regards to whether or not he had created a disturbance. Right. That's correct. And what I'm suggesting is that even if we believed that he had been sprayed for no reason, even if we believed despite the fact the record refutes he was returned to the same cell, even if we do believe that he was returned to the same cell, you know, the physical injuries were de minimis. That is why his claim for compensatory and punitive damages cannot survive, could not survive summary judgment. So, counsel, are you saying that the macing of an inmate without any proper penalogical reason could never result in a claim for damages because it never causes some physical injury? Well, he certainly would have a claim for nominal damages, Your Honor, but not for compensatory or punitive damages. That would be barred by the PLRA. So, essentially, a prison guard can mace anybody for any reason whatsoever and not be held accountable? Again, the PLRA governs, and so there would be an entitlement to nominal damages, but the claims for compensatory and punitive damages are barred under the PLRA. Okay. And I think I'm over my time. Thank you, Ms. Reynolds. Thank you very much. And Ms. Lennon, you've reserved some time for rebuttal. Thank you, Your Honors. As Judge Jordan pointed out, the district court did not reach the issue of injuries because it found there was no genuine issue of material fact as to whether there was a credibility contest. And it extends, for the harmless error analysis, to a credibility contest on the issue of injuries. So, Mr. Williams named off all sorts of injuries he was having, all sorts of mental health problems he was having following the incident. This is his firsthand account, according to a doctor who has simply reviewed his records. So, I'd ask the court to take that into account when employing the harmless error analysis. Also, the incident report that was authored by Apolli Rickman himself, Mr. Williams was still entitled to a use of force jury instruction post-summary judgment on the issue of the videos. And again, I'd just like to point out to the court, the summary judgment standard is to view all of the documents in the light most favorable to the non-moving party. And this was a pro se inmate, non-moving party, struggling with mental illness. If there are no further questions from the court, I would ask the court to reverse and remand for further proceedings. Thank you. All right. Thank you, counsel. And Ms. Lennon, you were appointed by the court to represent Mr. Williams. And the court thanks you for your service.